UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:                                         Chapter 13
Ollie Beatrice Foley,                          Case No. 18−29998−bhl
                  Debtor.

**DECISION ON CONFIRMATION OF CHAPTER 13 PLAN**

**INTRODUCTION**

On June 4, 2019, the court held a combined confirmation hearing on eight different chapter 13 plans filed in eight different chapter 13 cases,[1] including this one. All of the debtors are represented by the same counsel and all of the proposed plans include the same non-standard provision addressing secured creditors' lien-retention rights. Other than Chapter 13 Trustee Scott Lieske, no interested party objected, and, after the debtors satisfied the trustee's concerns, he recommended confirmation of all eight plans.

At the combined confirmation hearing, the court questioned whether the plans could be confirmed given that the lien-retention language in the non-standard provisions deviates from the lien-retention requirements in 11 U.S.C. §1325(a)(5)(B). Debtors' counsel acknowledged the deviation and stated it was intentional. Counsel explained that the non-standard provisions are intended to allow for the possible early release of secured creditors' liens and insisted that the language is not a barrier to confirmation because secured creditors have accepted the plans, within the meaning of §1325(a)(5)(A), by not objecting to confirmation. The court took the issue of confirmation under advisement.

After reviewing the plans, the Code, and relevant caselaw, the court now concludes that the plans may be confirmed. The language in the non-standard provisions is not a barrier to confirmation because the affected secured creditors have accepted these debtors' plans; a properly served secured creditor that declines to object to confirmation has accepted the proposed plan for purposes of §1325(a)(5)(A). This holding does *not* mean, however, that

---

[1] The other seven cases are Jose Rafael Cruz, Jr. and Gina Ann Cruz, 18-31759-bhl; Byron R. Jordan and Alexandria S. Jordan, 18-31837-bhl; Dekisha Bridges, 19-20051-bhl; Sharita Shaw, 19-20184-bhl; Patricia Ann Laverty, 19-20626-bhl; Scott Joseph Uren, 19-20648-bhl; and Valerie Patrice Lee, 19-20301-bhl.

secured creditors' lien rights will terminate early.  The court has serious questions about whether the language used achieves this goal.  Because that issue is not yet ripe, a final ruling on the impact (if any) of the non-standard provisions is for another day.

## BACKGROUND

Each of these eight debtors filed a chapter 13 plan using the district's required plan form. *See* E.D. Wis. Local Rule 3015(a) *Mandatory model plan* ("All Chapter 13 debtors must use the Chapter 13 model plan included in the Appendix to these Local Rules.").  All eight plans include a checkmark in Part 1.3 on the first page of the plan form, alerting creditors to the inclusion of a non-standard provision in Part 8 of the form.  Part 8 recites the same language concerning secured creditors' liens:

> *Creditors with secured claims shall retain their mortgage, lien or security interest in collateral until the earlier of (a) the payment in full of the secured portion of their proof of claim, or (b) discharge under 11 U.S.C. § 1328.*

Secured claims are otherwise addressed in Part 3 of the plan form.  Three of the debtors (Jordan, Bridges, and Lee) treat secured claims in Part 3.2 of their plans.  The other five debtors (Foley, Cruz, Shaw, Laverty, and Uren) treat secured claims in Part 3.3 of their plans.  The differences between these two groups stem from the "hanging paragraph" in 11 U.S.C. §1325(a).[2]

The Jordan, Bridges, and Lee plans address creditors with purchase money security interests in Part 3.2 because the claims were incurred *outside* the 910-day period preceding the petition date.  These secured claims are not subject to the restrictions in the hanging paragraph, and, consistent with Bankruptcy Rule 3012(b), the debtors ask the court, through their plans, to reduce the creditor's allowed secured claim to the value of the collateral, with the balance being treated as unsecured, consistent with 11 U.S.C. §506(a).  The Foley, Cruz, Shaw, Laverty, and Uren plans treat secured claims in Part 3.3 because the claims are held by creditors with

---

[2] The 2005 Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) added the "hanging paragraph" after §1325(a)(9).  It provides that "[f]or purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing."

purchase money security interests that were incurred *within* the 910-day period preceding the date of the filing of the petition and for which the underlying collateral is a motor vehicle acquired for the personal use of the debtor. Under the "hanging paragraph," these "910 car claims" cannot be reduced to the value of the collateral, as the debtor would otherwise have the right to do under §506(a). Accordingly, these debtors' plans provide for the payment of these secured claims in full with interest, regardless of the value of the collateral.

All eight proposed plans were properly served on the United States Trustee, the chapter 13 trustee, and all creditors, as required by Local Rule 3015(b). The plan form alerts creditors that if they "oppose the plan's treatment" of their claims, the creditor "must file an objection to confirmation," and, if no objection is filed, "the court may confirm the plan without further notice." No creditor chose to file a timely objection. In fact, only the chapter 13 trustee objected, and the debtors promptly resolved the trustee's concerns. Accordingly, in each case, the chapter 13 trustee entered a docket notice affirmatively recommending confirmation of each plan:

> *After considering all of the confirmation requirements provided by 11 U.S.C. section 1325, the trustee advises that there is a reasonable basis for concluding that the plan is confirmable, including that the debtor can make all payments under the plan and comply with the plan; and that the debtor has certified that the debtor properly served the plan on all necessary parties. The trustee consequently advises that the court may confirm the plan.*

After a June 4, 2109 combined confirmation hearing, the court took the issue of plan confirmation in all eight cases under advisement.

## ANALYSIS

Whether a chapter 13 plan should be confirmed is governed in large part by 11 U.S.C. §1325(a), which directs that the court "shall" confirm a plan if the conditions in nine numbered paragraphs have been satisfied. The first subparagraph requires a determination that the plan "complies" with all the provisions of chapter 13 and any other applicable provisions of the Bankruptcy Code. *See* 11 U.S.C. §1325(a)(1). Subparagraph (5) addresses how a chapter 13 plan may treat allowed secured claims.

At the June 4, 2019 confirmation hearing, the court raised questions about the non-standard provision and whether it prevented confirmation. In particular, the court questioned whether the language used runs afoul of the required treatment of allowed secured claims in

§1325(a)(5) or otherwise fails to comply with the Bankruptcy Code sufficient to preclude confirmation under §1325(a)(1). [3]

### A. Section 1325(a)(5) provides three alternative means of treating creditors with allowed secured claims in a Chapter 13 plan.

Under §1325(a)(5), a debtor may treat a secured creditor's claims in a chapter 13 plan in one of three ways. The debtor can: obtain the secured creditor's acceptance of the plan under §1325(a)(5)(A); propose a plan that provides specific payment and lien-retention terms spelled out in §1325(a)(5)(B); *or* surrender the underlying collateral to the secured creditor under §1325(a)(5)(C).

The debtors here argue that §1325(a)(5) is satisfied because all affected secured creditors have accepted the plans within the meaning of §1325(a)(5)(A). The debtors do not contend that either of the other conditions is met. None of the plans complies with §1325(a)(5)(B). While the claim payment provisions in all eight plans appear to satisfy subsection (B), the lien retention language added in the nonstandard provisions deviates from the treatment required to satisfy the statute. More specifically, the statute requires the plan to provide that the secured creditor retain its lien until the earlier of: "the payment of the underlying debt *determined under nonbankruptcy law*; or … discharged under section 1328." 11 U.S.C. §1325(a)(5)(B)(i)(I) (italics added). The non-standard provisions alter the italicized language to provide for the lien release at the earlier of "the payment in full *of the secured portion of their proof of claim*, or … discharge under 11 U.S.C. §1328." And, none of the debtors seeks to surrender collateral under §1325(a)(5)(C).

### 1. Courts are split on whether a properly served creditor's inaction indicates acceptance under §1325(a)(5)(A).

The appellate courts that have addressed the issue agree that a secured creditor accepts a plan under §1325(a)(5) when the creditor does not object to confirmation. The Tenth Circuit Court of Appeals unambiguously confirmed this point in *In re Jones*, 530 F.3d 1284, 1291 (10th Cir. 2008), albeit in dicta. While its holding rests on other grounds, the court of appeals flatly

---

[3] Here, the trustee advises that the record supports a finding that all §1325(a) requirements have been met and affirmatively recommends that the court confirm the plans and no other interested parties have objected to confirmation. The trustee's recommendation and lack of objections do not end the confirmation inquiry, however. The Supreme Court has confirmed that the bankruptcy court has an independent duty to ensure that a proposed plan satisfies all confirmation requirements. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277 (2010) ("the Code makes plain that bankruptcy courts have the authority – indeed, the obligation – to direct a debtor to conform his plan to the requirements of [the bankruptcy code]").

stated, in discussing §1325(a)(5), that a secured creditor's "failure to object constitutes acceptance of the plan." Similarly, the First Circuit Bankruptcy Appellate Panel has held that an objecting creditor's failure to appear at a confirmation hearing in prosecution of its confirmation objection supported the bankruptcy court's finding that the creditor had accepted the plan under §1325(a)(5). S*ee In re Lorenzo*, No. PR 15-001, 2015 WL 4537792 (B.A.P. 1st Cir. July 24, 2015) (noting the creditor "had an affirmative obligation to prosecute its objection and that obligation did not rest with either the chapter 13 trustee or the bankruptcy court"). No circuit or bankruptcy appellate panel has rejected this approach. The Seventh Circuit has not weighed in on the issue.

At the bankruptcy court level, courts are more widely split. In the years shortly after the passage of BAPCPA, at least three bankruptcy courts refused to find §1325(a)(5) satisfied by a creditor's failure to object. In all three cases, debtors proposed to bifurcate and cram down a creditor's 910 car claim, a treatment that would not comply with §1325(a)(5)(B) as impacted by the then newly-enacted "hanging paragraph." All three bankruptcy courts declined to read §1325(a)(5)(A) to equate the creditor's failure to object with acceptance of the plan, a reading the courts believed would allow the debtors to evade the newly enacted "hanging paragraph." *See In re Bethoney*, 384 B.R. 24, 33-34 (Bankr. D. Mass. 2008); *In re Montoya*, 341 B.R. 41, 45 (Bankr. D. Utah 2006); *In re Garner*, 399 B.R. 267, 273 (Bankr. D. Utah 2009).

More recently, two cases from the Northern District of Illinois produced conflicting answers on what constitutes "acceptance" under §1325(a)(5)(A). These more recent cases both involved chapter 13 plans that failed to provide secured automobile lenders with payments in "equal monthly" installments, one of the requirements in §1325(a)(5)(B). *See In re Shelton,* 592 B.R. 193, 205-06 (Bankr. N.D. Ill. 2018); *In re Carr*, 584 B.R. 268, 275, (Bankr. N.D. Ill. 2018). In each case, the secured creditor failed to object after being served with a plan that provided for periodic, but not equal monthly, payments to the creditor. After a lengthy analysis, the *Shelton* court refused to confirm the debtor's plan, concluding that the affected creditor's silence did not constitute acceptance under §1325(a)(5). The court in *Carr* reached the opposite conclusion, holding that a properly served creditor that does not object, necessarily accepts the proposed plan.

## 2. In the chapter 13 context, a properly served creditor's inaction constitutes acceptance under §1325(a)(5)(A).

At first blush, there is no clear textual answer to whether a creditor's failure to object signifies its "acceptance" of a proposed plan under §1325(a)(5)(A). Generally, acceptance can mean both an affirmative positive response or a passive acquiescence to a proposal. In the typical "offer and acceptance" context of contract formation, an offeree's silence usually *does not* signify acceptance, unless a reasonable person would understand silence as acceptance. 2 Williston on Contracts §6:53 (4th ed.).

But the chapter 13 plan confirmation process is not a normal contractual negotiation. Rather, it is a formal process through which a debtor proposes and serves affected creditors with a repayment plan that may alter those creditors' rights. *See* 11 U.S.C. §1322(b)(2) (chapter 13 plan may "modify the rights of holders of secured claims"). Secured creditors are not relegated to the sidelines, but are instead affirmatively invited to object to the debtor's proposed plan. *See* 11 U.S.C. §1324(a) ("A party in interest may object to confirmation of the plan."). The procedure for filing and serving objections is spelled out in Bankruptcy Rule 3015(f). In the context of this formalized process, a secured creditor that has been properly served, but then fails to voice any objection, should be treated as having accepted the proposed plan.

This is not to suggest that the absence of objection is a complete license for debtors to do whatever they wish in proposing repayment plans. The holding here relates solely to how §1325(a)(5) may be satisfied. The Code contains many other limitations on chapter 13 plans, and the court retains an independent duty to make sure all plans comply with those confirmation requirements. *See* 11 U.S.C. §1325(a)(1); *Espinosa*, 559 U.S. at 277. If a plan violates any other independent free-standing confirmation requirement, in §1325(a) or elsewhere in Title 11, the plan cannot be confirmed. *See In re Carr*, 584 B.R. at 274-275.

The *Shelton* court suggested that the differences between a creditor's rights in chapter 11 and chapter 13 supported the conclusion that silence should not mean acceptance. 592 B.R. at 204-06. This court respectfully disagrees. It is certainly true that in the chapter 11 context, a creditor has the right both to vote on a plan and to object to confirmation, while a chapter 13 creditor has only the latter right. But this difference actually supports holding that silence equals acceptance. Where the Bankruptcy Code and Rules affirmatively provide a single mechanism for a creditor to weigh-in on a proposed plan, it makes sense to treat a creditor's failure to

exercise that right as the creditor's acceptance of the plan. There is certainly nothing unfair in requiring a secured creditor to review and "speak up" when served with a plan it does not wish to accept.

This approach is also consistent with current chapter 13 practice. Following the 2017 amendments, Rule 3012 now allows debtors to ask the court to determine (usually reduce) the amount of a secured creditor's claim through the chapter 13 plan confirmation process. Where §506(a) applies and the creditor's allowed secured claim is limited to the value of its collateral, the debtor can obtain an adjudication on the value of the underlying collateral and reduce the allowed amount of the creditor's secured claim through plan confirmation. If the plan is properly served, the secured creditor's failure to object will result in the court adjudicating that issue in the debtor's favor. If the valuation of collateral and cramdown can be accomplished through service and the lack of objection, it follows that the same creditor's failure to object to the plan as a whole, after proper service, ought to signal the creditor's acceptance of the plan.

Moreover, while the Seventh Circuit has yet to rule that the failure to object is acceptance under §1325(a)(5)(A), two decisions in other contexts support this result. In *Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002), the Seventh Circuit held that a party with an interest in a debtor's intellectual property had "consented" to the bankruptcy sale of that property free and clear of the party's interests under §363(f) based on the party's failure to object. The court of appeals explained, "[i]t could not be otherwise; transaction costs would be prohibitive if everyone who *might* have an interest in the bankrupt's assets had to execute a formal consent before they could be sold." *Id*. If a properly served party's non-objection can constitute "consent" to a sale free and clear of that party's interests under §363(f), a secured creditor's non-objection should also constitute "acceptance" of a plan under §1325(a)(5)(A).

While the context and Code provisions are certainly different here, the underlying principle remains. There are currently more than 12,000 chapter 13 cases pending in this district. In the first six months of this year, judges confirmed nearly 1,500 chapter 13 plans and approved just over 1000 modifications of plans previously confirmed. Requiring debtors and creditors to negotiate, draft, and file some form of additional consent, on top of the already required service and objection process, would unnecessarily increase the processing time and costs for confirmation, choking an already busy system.

The Seventh Circuit has also emphasized in another context that creditors need to raise concerns about chapter 13 plans prior to confirmation. *See In re Harvey*, 213 F.3d 318 (7th Cir. 2000). *Harvey* involved a creditor's attempt to challenge an already confirmed plan based on asserted ambiguities between two forms of the plan that were circulated prior to confirmation. Applying well-established preclusion principles, the Seventh Circuit held the creditor could not attack the plan after having failed to object prior to confirmation. *Id.* at 321. In the context of doing so, the court of appeals rejected the suggestion that this placed an unreasonable burden on creditors, "[q]uite the contrary – it is perfectly reasonable to expect interested creditors to review the terms of a proposed plan and object if the terms are *unacceptable*, vague, or ambiguous." *Id.* at 322 (italics added). While no plan has been confirmed in the cases at hand and thus preclusion principles are not yet in play, the court of appeals' admonition to creditors on the need to object if a plan is "unacceptable," supports reading §1325(a)(5)(A) to mean that a creditor's silence signifies its acceptance of the proposed plan.

Finally, there is no unfairness to creditors under this approach. The Bankruptcy Rules require service of the proposed plan, and the plan form specifically alerts creditors of the need to file an objection if the creditor does not like the proposed treatment of its claim. In addition, the secured creditors here were also specifically alerted to the existence of a non-standard provision in these plans. All of the plans flag the inclusion of a non-standard provision by including a check in the box on the first page of the plan form. *See* Fed. R. Bankr. P. 3015.1(c)(1) (requiring local form plans to include "an initial paragraph for the debtor to indicate that the plan does or does not: (1) contain any nonstandard provision"). Creditors can hardly claim surprise.

Because a creditor's failure to object constitutes acceptance for purposes of §1325(a)(5)(A), the plans at issue satisfy §1325(a)(5). Having satisfied subsection (A) of §1325(a)(5), the plans do not need to satisfy the lien-retention requirements in §1325(a)(5)(B). Because the other requirements for confirmation in chapter 13 and Title 11 are also satisfied, the plans will be confirmed.

### B. What have the non-objecting creditors accepted?

While the court concludes that the secured creditors have accepted these plans sufficient to satisfy §1325(a)(5)(A) and will order the plans confirmed, the court does not rule on the impact of the lien-release language in the non-standard provisions. More specifically, the court

does not hold that secured creditors' liens will necessarily be released any earlier than would be the case in the absence of the non-standard provisions. That issue is not yet ripe for resolution, and the court has significant questions over whether the language used accomplishes the goal expressed by debtor's counsel at the confirmation hearing.

Each plan uses the same opaque language in Part 8:

> *Creditors with secured claims shall retain their mortgage, lien or security interest in collateral until the earlier of (a) the payment in full of the secured portion of their proof of claim, or (b) discharge under 11 U.S.C. § 1328.*

It is not entirely clear what "payment in full of the secured portion of their proof of claim" means.

Under the "hanging paragraph," some "allowed secured claims" are not subject to bifurcation under §506(a). Thus, for secured claims covered by the hanging paragraph, the "secured portion of [those creditors'] proofs of claim" likely means the entirety of that creditor's filed claim amount. This interpretation is inconsistent with counsel's explanation of the debtors' intent. A more direct statement – perhaps identifying the specific secured creditor and a specific dollar amount upon payment of which the liens would be released – might be effective. But debtors' counsel has unfortunately eschewed specificity.[4]

Because non-standard provisions are intended to reflect the particularities of an individual case, they should be used sparingly and only to reflect the unique needs of a particular debtor in a particular case. If all plans include non-standard provisions, especially boilerplate language like that employed here, the reasons for having a single, required plan form are undermined. Accordingly, the court discourages the use of boilerplate provisions, which, due to the necessary generalities, are often far from clear in their application to an individual case. A debtor that wishes to make sure that his or her plan accomplishes a specific non-standard treatment would be well advised to manuscript each non-standard provision. Given the identified ambiguity and likely ineffectiveness of the provisions here, the court would be within

---

[4] Perhaps counsel has chosen general language so that the same wording can be used in any number of plans, making plan drafting easier and more efficient. Or, perhaps more cynically, counsel has chosen this particular language in an attempt to mask the issue from affected creditors. Indeed, the language used and the language in §1325(a)(5)(B) are strikingly similar. To the less-than-careful eye, the non-standard provision might seem to simply parrot the language in §1325(a)(5)(B). Of course, if the language copied the wording in §1325(a)(5)(B), then a non-standard provision would be unnecessary.

its rights to order the provisions stricken when confirming these plans.  *Cf.* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.").  But that would also throw a wrench in the workings of the plan confirmation process.  Accordingly, while the court reserves its right to strike such provisions in the future, it will not do so here.

In any event, it is unnecessary for the court to interpret the non-standard provisions to resolve the pending confirmation issue.  And because there is no active case or controversy requiring the court to adopt an interpretation of the language, the court will refrain from commenting further.  When determining whether a dispute has yet matured to a point that warrants a decision, the "central concern is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."  13B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* §3532 (3d ed. 1998); *see In re Parker*, 285 B.R. 394, 398-99 (Bankr. E.D. Tenn. 2002) (declining to decide the appropriateness of an early lien-release provision in a chapter 13 plan on the grounds that doing so was premature).

## CONCLUSION

In sum, a creditor that is properly served with a chapter 13 plan and does not object has accepted the plan for purposes of §1325(a)(5)(A).  Because that section is satisfied and the record establishes there are no other obstacles to confirmation, the plans will be confirmed.

Dated August 19, 2019,

_____
Brett H. Ludwig
United States Bankruptcy Judge